**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Sean O. WATSON, Defendant–Appellant.**

**No. 91–3313**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Jan. 31, 1992.

Robert F. Barnard, Asst. Federal Public Defender, John T. Mulvehill, Federal Public Defender, New Orleans, La. (Court-appointed), for defendant-appellant.

Peter G. Strasser, Marvin Opotowsky, Asst. U.S. Attys., Harry Rosenberg, U.S. Atty., New Orleans, La., for plaintiff-appellee.

Before GARWOOD, HIGGINBOTHAM, and BARKSDALE, Circuit Judges.

GARWOOD, Circuit Judge:

Defendant-appellant Sean O. Watson (Watson) appeals his conviction and sentence on charges of possession of 4.4 grams of crack cocaine (cocaine base) with intent to distribute in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). Finding no merit in his appeal, we affirm his conviction and sentence.

## FACTS AND PROCEEDINGS BELOW

The facts are uncontroverted. At approximately 3:30 a.m. on April 1, 1990, two deputies from the Jefferson Parish Sheriff's Office, Officer Dwayne Scheuermann (Scheuermann) and Officer Charles Smith (Smith), were patrolling in their marked police car in the area around Airline Highway and Shrewsbury Road in Jefferson Parish, Louisiana. The officers considered this to be a high crime area known especially for drug trafficking.

Scheuermann and Smith observed a maroon 1980 Oldsmobile Cutlass driven by Watson pull into the parking lot of an abandoned gas station at the corner of Airline Highway and Shrewsbury. As the car pulled into the parking lot, Watson turned off the car's headlights. Watson thereafter brought the car to a stop in the parking lot and turned off the engine.

Suspicious of this activity, Scheuermann and Smith made a U-turn in their car and stopped near the car driven by Watson. As Scheuermann and Smith got out of their car, Scheuermann made eye contact with Watson and observed Watson move his body in his seat as if to conceal or retrieve something on the car floor. Scheuermann and Smith then observed another person sitting in the front passenger seat of the car. Scheuermann ordered both individuals out of the car. While Smith detained them at the front of the car, Scheuermann, standing outside the vehicle, visually scanned it for weapons. He saw that the steering column of the car had been cracked, suggesting that the car had been stolen, and he observed the handle of a large pistol protruding from under the driver's seat. The handle of this semi-automatic pistol was in plain view. Scheuermann retrieved the gun, which was loaded and chambered.

After Smith informed Watson of his *Miranda* rights, Scheuermann obtained Watson's written consent to search the car. During this search, Scheuermann found two containers of crack cocaine in the car's defroster vent.

Watson was tried and convicted of the charges specified above. Prior to trial, Watson moved to suppress the cocaine found in the car because the officers lacked reasonable suspicion to conduct an investigatory stop of Watson. After a hearing on the matter, the district court found the seizure evidence admissible and denied Watson's motion to suppress.

Watson was convicted after a jury trial and was sentenced on April 3, 1991. The district court sentenced Watson to sixty-five months on the drug-possession count and sixty months on the firearm-possession count, to be served consecutively. The court further sentenced Watson to three years supervised release and a $100 special assessment. Watson filed a timely notice of appeal.

## ISSUES ON APPEAL

Watson first claims that this Court should set aside his conviction because the court below allegedly erred by denying his motion to suppress. Watson does not challenge his grant of consent to search the car once Scheuermann asked him to get out. Rather, Watson merely contends that Scheuermann and Smith did not have a reasonable articulable suspicion upon which to base an investigatory stop

under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).[1] More specifically, Watson contends that this Court's decision in *United States v. Beck*, 602 F.2d 726 (5th Cir.1979), holds that reasonable suspicion is not present merely because two black men are sitting in a parked car in a high-crime neighborhood.[2]

While Watson is correct in his reading of *Beck*, and though the facts of *Beck* are similar in some respects to those of this case, crucial distinctions exist. First, the investigatory stop in *Beck* took place at approximately 4:00 in the afternoon. Here, events occurred at 3:30 A.M. Further, the defendants in *Beck* were merely standing beside their car when the officers first saw them. In this case, Scheuermann and Smith observed Watson pull his car into the parking lot of an abandoned gas station and simultaneously turn off the headlights, coming to a stop somewhat later. Finally, in *Beck* the officers noticed some furtive gestures and nervous actions on the part of their suspects, but this was only *after* the *Terry* stop occurred. In this case, Scheuermann, upon first making eye contact with Watson, saw him move about in his seat as if to conceal or retrieve some item.[3] In each instance, therefore, this case presents a more suspicious set of circumstances than those in *Beck* and reasonable suspicion is thus present here where it was not in *Beck*. *Accord United States v. Stanley*, 915 F.2d 54, 56–57 (1st Cir.1990).

Watson next contends that his sentence violated his constitutional equal protection and due process rights because the United States Sentencing Guidelines provide for a higher punishment for cocaine base than for a like amount of powder cocaine.

This Court has already decided that the crack-powder cocaine sentencing scheme of the Sentencing Guidelines does not offend constitutional due process guarantees. *United States v. Thomas*, 932 F.2d 1085, 1090 (5th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 264, 116 L.Ed.2d 217 (1991). *Accord United States v. Turner*, 928 F.2d 956, 959–60 (10th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 230, 116 L.Ed.2d 187 (1991); *United States v. Buckner*, 894 F.2d 975, 978–80 (8th Cir.1990); *United States v. Malone*, 886 F.2d 1162, 1166 (9th Cir. 1989); *United States v. Collado–Gomez*, 834 F.2d 280, 280–81 (2d Cir.1987), *cert. denied*, 485 U.S. 969, 108 S.Ct. 1244, 99 L.Ed.2d 442 (1988).

As to equal protection, Watson argues that because crack cocaine use is more prevalent among blacks and powder cocaine use more prevalent in whites, providing higher punishments for possession of crack than for a similar amount of powder cocaine violates constitutional equal protection guarantees.

The Sentencing Guidelines provide for heavier penalties for possession of cocaine

---

**1.** In determining when a "seizure" has occurred for the purposes of Fourth Amendment analysis, this Court has recognized that police-citizen contact can be broken down into three "tiers." In the first tier, mere communication between officer and citizen which involves no coercion or detention, no Fourth Amendment concerns are implicated. In the second tier, the investigatory stop, the brief seizure must be supported by a reasonable suspicion on the part of the law enforcement officer. Finally, the third tier, a full-scale arrest, must be supported by probable cause. *United States v. Zukas*, 843 F.2d 179, 181–82 (5th Cir.1988), *cert. denied*, 490 U.S. 1019, 109 S.Ct. 1742, 104 L.Ed.2d 179 (1989). Here, there was no coercion or detention by Scheuermann or Smith until they ordered Watson and the other passenger out of the car. The events up to this point are thus relevant parts of the reasonable suspicion analysis.

**2.** We assume, arguendo, that if the investigatory stop by Scheuermann and Smith was infirm,

that the evidence found in the subsequent consent-authorized search would be the fruit of a poisonous tree and therefore inadmissible.

**3.** In *Beck*, the Court did not mention the gestures between the defendants in its discussion of reasonable suspicion, though it did note them in its statement of facts. The *Beck* Court reasoned that the "stop" occurred as soon as the police officers pulled up to the defendants' car because in doing so the officers restricted access to the vehicle. Thus, in *Beck*, the suspicious movements of the defendants were observed by the officers after the stop had been made and could not have contributed to reasonable suspicion. Here, Watson's movement was made as Scheuermann exited his police car and began approaching Watson on foot. Thus, the movement was observed before the officers detained Watson by ordering him out of his car.

base (crack cocaine) than for powder cocaine. In Watson's case, possession with the intent to distribute 4.4 grams of cocaine base yielded a base offense level of 24 with a corresponding guideline range of 51–63 months imprisonment. For a like amount of powder cocaine, his offense level would have been 12 with a corresponding guideline range of 10–16 months imprisonment. Thus, as Watson contends (and as no one denies) there is a disparity between sentences mandated by the Guidelines depending on the type of cocaine involved.

Even assuming, however, that Watson could prove his disparate impact theory of race-based cocaine usage,[4] there is no reason to apply any heightened level of scrutiny to his claim because he has made no assertion of a discriminatory intent on the part of the United States Sentencing Commission in formulating the Guidelines. *See Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). *See also United States v. Solomon*, 848 F.2d 156–57 (11th Cir.1988) (statutory minimum penalty scheme for cocaine base and cocaine powder does not involve suspect classification or fundamental right). The Sentencing Guidelines must therefore be subjected only to rationality review. In this case, the fact that crack cocaine is more addictive, more dangerous, and can therefore be sold in smaller quantities is reason enough for providing harsher penalties for its possession. *See United States v. Thomas*, 900 F.2d 37, 39–40 (4th Cir.1990); *United States v. Cyrus*, 890 F.2d 1245 (D.C.Cir. 1989); *Solomon, supra*, 848 F.2d at 157.[5]

## CONCLUSION

Because we conclude that (i) no error has been demonstrated in the district court's

4. Watson merely alleges such a disparity in his brief; he has offered no evidence, here or below, to substantiate this claim.

5. To our knowledge, the only court that has not dismissed this equal protection challenge to the difference in sentences for possession of cocaine base and cocaine powder is the Minnesota Supreme Court. In *State v. Russell*, 477 N.W.2d 886 (Minn.1991), a divided Minnesota Supreme Court held that a Minnesota state sentencing provision which provided for higher penalties for possession of crack cocaine than for equal quantities of powder cocaine violated the equal

denial of the motion to suppress, and (ii) no unconstitutional infirmity exists in the Sentencing Guidelines' treatment of crack vis-a-vis powder cocaine, Watson's conviction and sentence are

AFFIRMED.

protection clause of the Minnesota Constitution. The *Russell* court noted that the rational basis test applied under the Minnesota Constitution (the analysis used by the court in that case) is more stringent than its federal counterpart (the court refers to "our stricter standard of rational basis review" and observes that under "the Minnesota rational basis analysis, we have been unwilling to hypothesize a rational basis to justify a classification, as the more deferential federal standard requires"). Thus, even *Russell* says nothing against our conclusion, reached here under federal law.