**UNITED STATES of America**

v.

**Jesus MEZA–DIAZ.**

**Crim. No. L–94–140.**

United States District Court,
S.D. Texas,
Laredo Division.

Sept. 9, 1994.

———

Juan E. Gonzalez, Edinburg, TX, Adriana Arce–Flores, Federal Public Defender, Laredo, TX, for defendant Jesus Meza–Diaz.

Yvonne Salinas Gonzalez, U.S. Attys. Office, Laredo, TX, for plaintiff U.S.

*MEMORANDUM AND ORDER*

KAZEN, District Judge.

Pending is Defendant's motion to suppress. An evidentiary hearing was held on August 19, 1994. The Government thereafter filed a Memorandum of Law ("Memorandum"[1]) in opposition to the motion. In that Memorandum, the Government very commendably has, with minor exception, fairly set forth the facts pertinent to this motion. That statement of facts is basically incorporated herein by reference, but a brief recitation follows.

On July 6, 1994, at approximately noon, Border Patrol Agent Javier Gonzalez was working as a solo roving patrol unit on FM 1017, just south of its intersection with State Highway 285. Gonzalez was parked on the side of FM 1017 and watched a procession of seven vehicles go by travelling north. He decided that all seven vehicles were "suspicious." He therefore started his vehicle, began to follow the caravan, passed up all seven vehicles, and headed toward the intersection. In the process, he turned on his overhead, emergency lights. He arrived at the intersection, parked his vehicle parallel to the road on the right side, and promptly exited. He estimated that the lead vehicle of the caravan—the Defendant's truck—arrived within "seconds" of his own arrival. He whistled at the Defendant to get his attention and, through an arm gesture, directed him to stop. The other six vehicles stopped behind in due course. Having radioed for backup help, Agent Gonzalez thereupon declared himself an *ad hoc* checkpoint. He and the other arriving agents "inspected" all seven vehicles. Contraband was found in Defendant's vehicle; nothing was found in the others. When the seven inspections finished, the agents departed, thus terminating "the checkpoint."

Because of certain concessions made by the Government—concessions with which this Court agrees—the dispositive issue for this motion is a narrow one. As the Government recognizes, this case cannot be analyzed under checkpoint precedence "since there was no checkpoint, in reality, at the time Defendant stopped at the stop sign." Memorandum, page 6, footnote 5. There were none of the normal trappings of a checkpoint, and there is absolutely no evidence to support the statement at page 3 of

1. For ease of reference, the Court has taken the liberty of numbering the pages of the Government's unnumbered Memorandum, and those pages will be periodically cited herein.

the Memorandum that Agent Gonzalez "intended to begin putting out traffic cones in order to set up the checkpoint." He gave no testimony to that effect. There is no indication that he was even equipped with traffic cones and the fast-paced chronology of events would dictate that Gonzalez was doing well enough to beat the caravan to the intersection, much less take time to set out traffic cones.

Despite detailing the various reasons why Gonzalez thought he had justification for stopping these vehicles, the Government also concedes that there was neither probable cause nor reasonable suspicion to stop Defendant's vehicle. Memorandum page 5, footnote 3. The Court agrees. The Defendant was travelling on a public highway around noon on a weekday in South Texas. He was driving a white pickup truck with Texas license plates. That the white truck was "unusually clean," lacked a "headache rack," and had no toolbox in its bed are hardly indications of criminal activity. Nor is the fact that the Defendant was driving alone or wearing clothes and a hat that "appeared clean." Nor is Defendant's lack of eye contact or making a "friendly gesture" to Agent Gonzalez.

The Government correctly notes that in determining whether a "seizure" has occurred for Fourth Amendment purposes, police-citizen contact is broken down into three "tiers." *United States v. Watson*, 953 F.2d 895, 897 n. 1 (5th Cir.1992). The Government argues that the contact between Agent Gonzalez and this Defendant was at the first tier, i.e., "mere communication between officer and citizen which involves no coercion or detention." *Id.* The Government correctly recites that a seizure occurs when an officer, either by application of physical force or by show of authority, somehow restrains a person's liberty. *California v. Hodari D*, 499 U.S. 621, 624, 111 S.Ct. 1547, 1550, 113 L.Ed.2d 690 (1991). The Government maintains that Agent Gonzalez made no show of authority and that, in any event, the Defendant did not respond to it. Instead the Government maintains that the Defendant stopped simply because the flashing traffic

signal at the intersection commanded him to do so. The Court disagrees.

Obviously the traffic signal dictated a stop at the intersection. Common experience dictates, however, that normally such a stop might not even be complete and would certainly be no longer than necessary to look both ways for oncoming traffic. This is a far cry from what happened here. The Defendant was passed on the highway by an obviously accelerating, marked Border Patrol unit with emergency lights flashing. That unit beat him to the intersection by a matter of seconds. A uniformed agent then exited from the vehicle. At this point the agent was 10–15 feet *in front* of the stop sign at the intersection. See Memorandum page 3, footnote 1. According to Agent Gonzalez' own testimony, he was afraid that the Defendant was going to ignore him and proceed on to the intersection. Therefore, "I whistled to the guy," and he then made an arm gesture. At the hearing, Gonzalez demonstrated his arm gesture and the Court finds that it was clearly a gesture of authority commanding one to stop. It appears that Defendant's vehicle actually stopped somewhere between Gonzalez and the stop sign. Gonzalez testified that the arm gesture was intended to direct Defendant to "come back" to Gonzalez but instead the Defendant simply "stopped where he was." The Government's Memorandum totally ignores Agent Gonzalez' forceful arm gesture. With respect to Gonzalez' whistle, the Government recognizes that it caught Defendant's attention but maintains that it had no bearing on Defendant's conduct. The totality of the circumstances here strongly point to an opposite conclusion. The Court concludes that the Defendant's stopping went beyond a momentary stop for a flashing light. It was a stop and submission to the approach and questioning by Agent Gonzalez and was done in response to an intentional show of authority.

This Court is well aware of its own prior decisions finding that a defendant had stopped of his own accord and not in response to a governmental show of authority. Even at an intersection such as this, there might be no Fourth Amendment implication if an agent simply stood at the intersection

and made visual inspection of occupants or vehicles coming into plain view during their brief voluntary stops. That is simply not the fact situation presented here. The Court is keenly aware of the size and value of the contraband found in the Defendant's vehicle. This is the type of case that generates intense criticism of the suppression remedy. Nevertheless, this Court must apply existing law to the facts as it finds them. This is a case where an agent without probable cause or reasonable suspicion detained seven vehicles at an intersection for an undetermined amount of time in order to inspect them. His hunch proved right in the case of one vehicle and wrong for the other six, for a success rate of fourteen percent. It may well be that if the agents stopped every unfamiliar vehicle on South Texas roads, especially FM 1017, they would find evidence of criminal activity in fourteen percent of them. This, however, is not the system under which we operate. So long as that is true, the pending motion must be and it is GRANTED.