UNITED STATES of America, Plaintiff,

v.

Jaron L. BUCKHANNON, Defendant.

No. 97–M–9117–01.

United States District Court,
D. Kansas.

Sept. 15, 1997.

Kris R. Poppe, Sp. Asst. U.S. Atty., Ft. Riley, KS, for Plaintiff.

Henry O. Boaten, Junction City, KS, for Defendant.

## MEMORANDUM AND ORDER

REID, United States Magistrate Judge.

On September 9, 1997, this court held an evidentiary hearing on defendant's motion to suppress the evidence obtained as a result of an unlawful traffic stop.

Jeffrey Nixon is a military policeman (M.P.) at Ft. Riley, Kansas. He was on routine patrol in the early morning hours of May 25, 1997. During his shift, one of his duties was to conduct standard security checks of certain buildings at night. The security checks are designed to make sure that the buildings and the surrounding areas are secure. The M.P. provided a written document setting forth which buildings were to be checked each night. The document included a column for before midnight and another column for after midnight. One of the buildings in which security checks were to be conducted is Ware Elementary School.

At 12:15 a.m. on May 25, 1997, Officer Nixon observed a vehicle in a gravel lot next to Ware Elementary School. Nixon testified that "No Parking" signs are posted at the entry to the lot. The lot is used for buses transporting children to and from the school. Nixon has not seen cars park in this lot. Therefore, it was unusual for him to see a car parked there late at night. The vehicle had its lights on. Officer Nixon and his companion turned into the lot in order to investigate. When they turned into the lot, the vehicle's lights were turned off, and the vehicle began to back up. However, the vehicle then stopped. Nixon exited his vehicle and went up to the defendant, who was driving the car. Nixon testified that when an M.P. sees someone around a building where security checks are conducted at night, it is standard operating procedure to stop the person and ask for their identification. Typically, once the person has been identified, the person would be warned to stay out of the area and released. When Nixon spoke to the defendant, he noticed the strong odor of alcohol. The defen-

dant was arrested and charged with driving while under the influence of alcohol, driving on a suspended license, open container, and minor consuming alcohol. Nixon testified that he stopped the car because the car was at a building where security checks are conducted at night, and not because of the "No Parking" sign or any traffic violation.

A traffic stop is a seizure under the Fourth Amendment, even though the purpose of the stop is limited and the resulting detention quite brief. An ordinary traffic stop is characterized as an investigative detention rather than a custodial arrest. To determine the reasonableness of an investigative detention, the first inquiry is whether the officer's action was justified at its inception. *United States v. Botero–Ospina,* 71 F.3d 783, 786 (10th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 2529, 135 L.Ed.2d 1052 (1996). A traffic stop is valid under the Fourth Amendment if the stop is based on an observed criminal or traffic violation or if the police officer has reasonable suspicion that a criminal, traffic or equipment violation has occurred or is occurring. The sole inquiry is whether this particular officer had reasonable suspicion that this particular motorist violated a criminal, traffic or equipment law or regulation of the jurisdiction. It is irrelevant if the officer had other subjective motives for stopping the vehicle. *See Id.* at 787; *United States v. Nicholas,* 104 F.3d 368 (table), 1996 WL 731605 at *2 (10th Cir. Dec.20, 1996).

There is no disputing the fact that the defendant was parked in a posted no parking area. Even if the subjective motive for stopping the car was that it was at a building where security checks were conducted, the officer nonetheless had a reasonable suspicion that a traffic violation had occurred. That alone justifies the investigative detention.

The court will also uphold the stop on the basis that the officer had a reasonable articulable suspicion that the defendant had been, was about to, or was engaged in criminal activity. A number of cases have found reasonable suspicion to stop a vehicle which has parked near a closed business late at night when the defendant engages in suspicious behavior when he or she becomes aware of the officer's presence. See *United States v. Dawdy,* 46 F.3d 1427, 1429–1430 (8th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 195, 133 L.Ed.2d 130 (1995) (defendant parked in back of closed business at 10:00 p.m., recent false burglary alarms at the business, and defendant attempted to leave when he observed officer); *United States v. Watson,* 953 F.2d 895, 897 (5th Cir.), *cert. denied,* 504 U.S. 928, 112 S.Ct. 1989, 118 L.Ed.2d 586 (1992) (defendant's car pulled into abandoned gas station at 3:30 a.m., and defendants sought to conceal or retrieve some item when they observed officers); *State v. Sailing,* 1997 WL 280269 at *2–3 (Wis.App. May 29, 1997) (two vehicles in parking lot at 2:30 a.m. of business which was closed, vehicle not there when officer had driven by there numerous times earlier); *State v. Watkins,* 337 N.C. 437, 442–43, 446 S.E.2d 67, 70–71 (N.C.1994) (anonymous report of suspicious vehicle behind business at 3:00 a.m.; car observed moving with its lights off in parking lot, business closed). Recently, the 10th Circuit, in dicta, stated the following:

> The time of the incident has little relevance in this analysis. Mr. Nicholas's car was parked in the lot of an establishment that was open for business for twenty-four hours each day. It is reasonably inferable the business maintained those hours because enough customers frequented it late at night and early in the morning to make its hours of operation available. **Had defendant's car been spotted in the lot of an abandoned building, or at least a closed business, the district court's consideration of the time of day** (5:30 a.m.) **to shroud the incident in suspicion would have been more logical** (emphasis added).

*United States v. Nicholas,* 104 F.3d 368 (table), 1996 WL 731605 at *2 (10th Cir. Dec. 20, 1996). Thus, the 10th Circuit has indicated that the presence of a vehicle in a closed or abandoned building late at night is a relevant consideration in determining if an officer has reasonable suspicion to make an investigatory stop.

In this case, the officers knew that the defendant was in a vehicle parked in a posted no parking zone at 12:15 a.m. when the school was closed, the lot was one in which cars do not normally park, the school was included in a scheduled security check at night, and the driver of the vehicle turned off his lights and backed up when the military police entered the lot. Such factors gave the police reasonable suspicion not only that a traffic or parking infraction had occurred, but also of criminal activity. For these reasons, the court holds that the traffic stop was justified at its inception.

IT IS THEREFORE ORDERED that the motion to suppress is denied.