United States Court of Appeals
Fifth Circuit

**F I L E D**

October 11, 2004

Charles R. Fulbruge III
Clerk

REVISED OCTOBER 22, 2004

In the

# United States Court of Appeals

## for the Fifth Circuit

––––––––––––––––

m 03-10827

––––––––––––––

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

VERSUS

RICHARD KENNETH WALLEN,

Defendant-Appellee.

––––––––––––––––––––––––

Appeal from the United States District Court
for the Northern District of Texas
m 03-CR-152-ALL-A

––––––––––––––––––––––––

Before SMITH, WIENER, and PICKERING,
Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Richard Wallen was charged with possession of two firearms that were not registered to him in the national registry, in violation of 26 U.S.C. § 5861(d). Alleging violation of his Fourth Amendment rights, he successfully moved to suppress evidence seized from his truck. The government takes an interlocutory appeal from the suppression order. Finding error, we reverse and remand.

I.

Wallen's vehicle was stopped for speeding by Officer Bryan Miers. As Miers approached Wallen's vehicle, he observed what appeared to be two rifles on the passenger side of the truck. When Miers requested Wallen's license and proof of insurance, Wallen responded that he thought they were in his wallet that was somewhere on the passenger side of his truck.

Wallen, who was alone, exited the truck and walked around the front of the truck to the passenger side, which he opened. As Wallen stepped out of the vehicle, Miers noted that he was barefoot.

After reaching the passenger side, Wallen started searching through the clutter of items, with Miers standing right behind him. As the search began, Miers noticed a handgun protruding from underneath a bag and interceded, "Okay, just, that's okay, just step away from, man you're making me nervous with all those weapons in there. Just go ahead and shut the door and step to the rear of the truck please."

Wallen complied, whereupon Miers asked Wallen whether he had a license to carry a concealed weapon. Wallen stated that he did not have a license but that he was not carrying any concealed weapons. Miers then asserted that Wallen was carrying handguns, to which Wallen replied that he was carrying guns "from a place of business which is . . . handgun oriented," which, he contended, the law allowed. Miers then told Wallen that the fact that he had a gun business was only a defense to transporting a concealed handgun.

Because Wallen had thus far failed to produce identification, Miers asked for his name, date of birth, and address. He left Wallen at the rear of the truck, asking him to "hang tight." While radioing the information from his patrol car, he observed Wallen moving toward the cab of his truck. Miers exited the patrol car and instructed Wallen to return to the rear of the truck. Wallen hesitated in compliance, at first only moving partially to the rear of the truck. After being given the instruction for a second time, Wallen complied.

After returning to his patrol car, Miers verified the personal information Wallen had giv-en him and discovered that authorities in Dallas County had a warrant out for Wallen's arrest for a traffic violation. Miers exited the car, put Wallen in handcuffs, and placed him in the backseat of the patrol car. Miers told Wallen he was placing him in "temporary custody" until the warrant could be confirmed because of "the amount of firepower that you have [unintelligible] in this vehicle."

Miers began to search the interior of Wallen's truck, uncovering four rifles, three handguns (two of which were loaded), and a shotgun. He observed that the barrel of one of the rifles had been threaded at the end to allow an attachment to be screwed on. While searching, Miers received a communication, informing him that the aforementioned warrant for Wallen could not be executed outside Dallas County.

Miers returned to the patrol car and asked Wallen what kinds of weapons he had, to which Wallen responded that he had three handguns and four rifles (not mentioning the shotgun). Wallen explained that he operated a shooting range and was presently moving the weapons to his residence because of flooding. Miers then informed Wallen that the warrant for his arrest could not be confirmed, but he would nevertheless remain in custody because of possession of handguns without a permit and because of the fact that he did not know who Wallen was or what he was intending to do with the weapons.

Miers called another officer and his supervisor to the scene. On arrival, they confirmed that the guns were not stolen, and measured the barrel length of the gun that had the threading on the end of the barrel. Miers told his supervisor that given the amount of firepower Wallen possessed, his lack of identification, and the threaded rifle barrel, Miers was

concerned that Wallen might be a sniper. Wallen then insisted that he was merely transporting the guns from his firing range and suggested that the officers contact the Duncanville Police Department to vouch for his ownership of a shooting range.

After determining that the length of the threaded barrel was fifteen and one-half inches, the officers called an agent at the Bureau of Alcohol, Tobacco, and Firearms, who informed them that the possession of a barrel shorter than sixteen inches was a violation of federal law unless the weapon was registered. Wallen was placed under arrest, approximately one hour and nineteen minutes after the initial stop, for unlawfully carrying concealed weapons and the firearms violation. The police subsequently discovered a silencer in Wallen's truck and established the fact that one of the weapons was fully automatic. The entire traffic stop was recorded by a camera in Miers's vehicle.

## II.

The government charged Wallen with unlawful possession of a machine gun and a silencer in violation of § 5861(d). Wallen moved to suppress the guns, claiming an unreasonable search and seizure under the Fourth Amendment. During the suppression hearing, the parties presented the court with Miers's testimony and with the videotape of the stop. Holding that the guns seized from Wallen's vehicle were obtained through an illegal search for which no exception applied, the district court suppressed them.

The government moved for reconsideration in which it reiterated prior arguments regarding the validity of the search. It contended, *inter alia*, that the search was permissible under *Michigan v. Long*, 463 U.S. 1032, 1049 (1983), which allows an officer to search the passenger compartment of a vehicle if he has a reasonable suspicion that the person poses a danger and may gain immediate control of weapons.

The court denied the motion, holding that *Long* did not apply because Wallen could not have gained control of the weapons after he was already handcuffed and in the patrol car, and that it was not reasonable to consider him dangerous, because he was cooperative with Miers. Citing Miers's inconsistent reasons for placing and keeping Wallen in custody, the court concluded that the search was not a valid protective sweep for weapons, but rather a "rummaging through the vehicle in an effort to find illegal firearms that could provide incriminating evidence against Wallen." The government appeals the denial of the motion for reconsideration pursuant to 18 U.S.C. § 3731 and rule 4(b)(1)(B)(i), FED. R. APP. P.

## III.
### A.

We uphold a district court's findings of facts on a motion to suppress unless they are clearly erroneous. *United States v. Shabazz*, 993 F.2d 431, 434 (5th Cir. 1993). Conclusions of law are reviewed *de novo*. *United States v. Gonzales*, 190 F.3d 668, 671 (5th Cir. 1999). Findings that are in plain contradiction of the videotape evidence constitute clear error.[1]

---

[1] *See, e.g., United States v. Jones*, 234 F.3d 234, 237 n.1, 241-43 (5th Cir. 2000) (rejecting witness testimony regarding whether an answer aroused an officer's suspicion, and correcting findings regarding the time at which a transaction occurred, because testimony and findings conflicted with videotape evidence).

### B.

Under the Fourth Amendment, warrantless searches are presumptively unreasonable, and the government bears the burden of establishing circumstances to justify them. *United States v. Lage*, 183 F.3d 374, 380 (5th Cir. 1999); *United States v. Berick*, 710 F.2d 1035, 1037 (5th Cir. 1983). The government argues that the search was valid under *Long*.

In *Long,* two police officers stopped to investigate a car that had swerved into a ditch. *See Long*, 463 U.S. at 1035. The driver appeared intoxicated, and when the officers followed him to his vehicle, they noticed a hunting knife on the floorboard, so they frisked him and searched the car for weapons. *See id.* at 1036. During the search, they shone a light into the car, observed something protruding from under the armrest, and discovered a pouch containing marihuana. *See id.* at 1036, 1050.

The Supreme Court determined that protective pat-down/frisk searches authorized by *Terry v. Ohio,* 392 U.S. 1, 22 (1968), extend to passenger compartments of automobiles, but limited to those areas in which a weapon may be placed or hidden, when the police officer possesses "an articulable and objectively reasonable belief that the suspect is potentially dangerous." *See Long*, 463 U.S. at 1051. "'[The] issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.'" *Id.* at 1050 (quoting *Terry*, 293 U.S. at 27). The Court emphasized the need to protect officers' safety, because "roadside encounter[s] between police and suspects are particularly hazardous, and . . . danger may arise from the possible presence of weapons in the area surrounding a suspect." *Id.* at 1049. The Court determined that the officers acted reasonably in taking preventive

measures to ensure that there were no other weapons within the person's immediate grasp before permitting him to reenter his automobile. *Id.* at 1052.

Under *Long*, this court has found protective searches of automobiles valid under the Fourth Amendment where the police officer had an objective reason to fear for his safety or the safety of others.[2] Where we have rejected a protective search, the officers had almost nothing on which to base a concern for safety; the police did not observe unusual weapons, nor did the individuals act in a particularly suspicious manner.[3]

Miers encountered facts that would objectively cause him reasonably to suspect that there were other weapons in the vehicle and to worry about his safety. At the time of the protective search, Miers knew Wallen possessed

---

[2] *See, e.g., United States v. Baker*, 47 F.3d 694 (5th Cir. 1995) (upholding protective automobile search based on existence of hunting knife, ammunition, and occupant's general statement that she "did not know" the location of a pistol); *United States v. Coleman,* 969 F.2d 126, 131 (5th Cir. 1992) (upholding protective automobile search after an individual stopped for traffic violation admitted to possessing gun in pouch where he kept license and registration); *United States v. Maestas*, 941 F.2d 273, 277 (5th Cir. 1991) (upholding search of a car based on accusatory and threatening conversations between two parties in car).

[3] *See, e.g., Estep v. Dallas County,* 310 F.3d 353, 358 (holding that camouflage gear, National Rifle Association sticker, key-chain mace, and an unusual tone of voice on the part of the passenger did not justify protective automobile search); *see also United States v. Hunt*, 253 F.3d 227 (5th Cir. 2001) (holding that the mere fact that the driver met the officer outside his car with a license does not justify a protective search).

at least three weapons in his truck. Wallen disobeyed instructions at least once, when he walked in the general direction of the cab after Miers had instructed him to "sit tight" at the rear of his vehicle.

Wallen had admitted that he lacked any documentation for the weapons, and he could not provide anything at the time to support his claim that he owned a target range. At the time that the search was initiated, he was aware of a Dallas County warrant issued on his arrest. Additionally, the stop happened at night, and Wallen was suspiciously barefoot.[4] Miers's actions were justified, because on these facts, "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.*

Despite this binding authority, the district court concluded that Wallen was not dangerous, and the search was invalid, because (1) Wallen was in handcuffs at the time of the search; (2) Miers did not intend to release Wallen back into his vehicle; (3) Wallen was cooperative throughout the traffic stop; and (4) Miers did not actually fear for his own safety. The district court's grounds lack merit.

First, the court was incorrect in finding that the protective search was invalid because Miers had already placed Wallen in handcuffs. This finding misunderstands the nature of the protective search; the fear of a person's gaining immediate control of weapons does not limit itself to the time of the stop, but extends through the entire interaction between him and the officer. In *Long*, 463 U.S. at 1051-52, the

Court identified a purpose of protective searches to be the concern that "if the suspect is not placed under arrest, he will be permitted to reenter his automobile, and he will then have access to any weapons inside."

The possibility that Miers might release Wallen to his truck would provide grounds for the protective search. Additionally, in *United States v. Sanders*, 994 F.2d 206, 208-10 (5th Cir. 1993), we rejected a similar argument that a frisk was invalid because the suspect was already in handcuffs with respect to a *Terry* stop. We recognized that suspects in handcuffs can remain a danger to the police, particularly when weapons are present. *Id.* As a result, we held that the danger justified a patdown to secure the officer's safety. Given that a protective sweep of an automobile under *Long* is viewed as a "*Terry* pat-down" of a car, the *Sanders* rule applies here to legitimize this sweep, although Wallen was in handcuffs at the time.[5]

The district court's reasoning that this search was invalid under *Long*, because Miers did not intend to release Wallen back to his car, is unavailing, because the district court contradicts itself in its findings. To refute the inevitable-discovery argument that was made by the government during the suppression hearing, the district court found:

> The contents of the tape leave open the possibility that Officers [sic] Miers would not have arrested Wallen for his possession of the handguns that were found on the seat

---

[4] *See Long*, 463 U.S. at 1050 (relying in part on the fact that it was night as a factor enhancing danger to the police).

[5] *See United States v. Ibarra-Sanchez*, 199 F.3d 753, 760 n.7 (5th Cir. 1999) (noting that a *Long* protective sweep of a van "might also be justified" in a case where the police had placed all the occupants in handcuffs and in the backseats of their patrol cars).

if Officer Miers had not discovered what he considered to be other illegal weapons through his warrantless search of the vehicle. Though not apparent from the record, there is a possibility that Officer Miers did, to some degree, accept Wallen's position that he had a right to be transporting the handguns to his home from his gun range east of Ferris, Texas.

The district court cannot have it both ways; its finding of fact that there was a possibility that Wallen would be returned to his vehicle establishes the threat of danger that justifies a *Long* search, despite the fact that at the time of the search the defendant was handcuffed.

Additionally, the district court's rationale that a *Long* search was not permitted because of its finding that Wallen was "cooperative" is not compelling. The videotape demonstrates, and the district court noted, that Wallen disobeyed Miers's instruction to "hang tight" at the rear of the truck, and he delayed in complying with the instruction to return when he subsequently left his position.

Even if Wallen's conduct was the result of an honest misunderstanding regarding Miers's instructions, the conduct must be analyzed from the officer's perspective. *See Long*, 463 U.S. at 1049. From Miers's perspective, a reasonably prudent person would be warranted in detecting danger from these circumstances, particularly in light of the guns that were already identified in plain view.

The district court's finding that Miers did not in fact fear for his safety is incorrect, because the validity of the protective search is based on objective evidence. The subjective motivations of police are irrelevant to determining whether a search or seizure is reason-able under the Fourth Amendment.[6] Specifically with regard to the matter of a protective sweep under *Long*, this court has emphasized that there is no legal requirement that an officer subjectively fear for his own safety before engaging in such a search.[7] Even if the district court was correct in finding that Miers was not actually fearful for his safety, the circumstances of this case would be enough objectively to put a reasonable officer in fear and thus to justify the instant search under *Long*.

## IV.

Miers may not have proceeded in his investigation of the traffic stop in the most prudent manner, but his actions did not violate the Fourth Amendment. Under *Long*, Miers's search after handcuffing Wallen was valid, in that he had reasonable objective grounds to fear for his safety. As the district court found, Miers's sweep of the vehicle uncovered the rifle with the allegedly short barrel. Because the parties do not contest that the short-barrel gun provided Miers with probable cause to arrest Wallen and to search and impound the remaining weapons, the silencer and the machine gun, the order suppressing them was improvidently granted.

---

[6] *See Whren v. United States*, 517 U.S. 806, 813 (1996) ("Not only have we never held . . . that an officer's motivation invalidates objectively justifiable behavior under the Fourth Amendment, but we have repeatedly held and asserted to the contrary.")

[7] *See Baker*, 47 F.3d at 694 (rejecting argument that lack of actual fear on officer's part invalidated *Long* automobile search, because Fifth Circuit "has never held that an officer's objectively reasonable concern for safety does not justify a protective search for weapons where the officer has no actual fear for his safety").

6

The suppression order is REVERSED, and this matter is REMANDED for further proceedings as appropriate.