**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**December 13, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 06-30176

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

JEREMY BROWN,

Defendant-Appellee.

Appeal from the United States District Court for
the Middle District of Louisiana
(USDC No. 3:05-CR-62-1)

Before REAVLEY, STEWART, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

The Government appeals the district court's grant of Brown's motion to suppress a

gun, marijuana, and drug paraphernalia recovered from Brown's person, auto, and

residence pursuant to a <u>Terry</u> stop in the parking lot of Brown's apartment complex. For

the following reasons, we reverse the district court's order suppressing the drug and

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

weapon evidence and remand to the district court for further proceedings.

## I. FACTS AND PROCEEDINGS

On the evening of June 4, 2004, two Baton Rouge police detectives were working extra-duty shifts for a private company that provides security services for several area apartment complexes. On the night in question, the officers were providing security for the Spanish Arms complex, which had a "no loitering" policy. The officers were tasked with monitoring the parking lots and, if called for, advising tenants and visitors of the policy. The officers later testified that they were hired because the complex had experienced some problems with crime.

At around 8:30 p.m. the two officers were patrolling the complex in an unmarked police car when they passed a car parked in the parking lot with two men inside, one of whom was Brown. The officers did not approach the car on the first pass, but some five to ten minutes later, they noted the two occupants still seated in the car and, parking their own vehicle, approached Brown's car on foot. The officers were clad in pullover shirts with the word "POLICE" written across the chest in large letters. The officers later testified that, when Brown and his companion spotted them approaching, they slumped down and appeared to be reaching underneath both the driver's and passenger's seats suspiciously.

The officers testified that, based on their experience, they believed and feared the two men may have been concealing or retrieving a weapon. The detectives ordered Brown and his companion out of the car, then conducted a pat-down search of the men.

2

A two-ounce baggie of marijuana was found in Brown's right knee pocket. The officers advised Brown he was under arrest and handcuffed and <u>Miranda</u>-ized both men.[1] The officers then searched the car, finding a loaded revolver underneath the driver's seat and three bags of marijuana under the passenger's seat.

In response to questions from the officers, Brown revealed that he lived on the property and had more marijuana and a digital scale in his apartment. The officers asked Brown for voluntary consent to search his residence, which Brown provided. The officers recovered the marijuana and scale from locations Brown indicated and also found additional plastic baggies sitting next to the scale. Brown was taken to the narcotics office and, during booking, revealed that he had more marijuana in the same pocket where the detectives found marijuana during the pat-down.

Brown, who had a prior felony record, was indicted for possession of a firearm by a convicted felon and possession of marijuana. Brown moved to suppress evidence of the gun and marijuana, alleging that the officers lacked reasonable suspicion that criminal activity was afoot when they conducted the pat-down and that the subsequent car and residence search were thus not justified. The district court granted Brown's motion, finding that Brown's slouching in his seat and apparent hiding or retrieving of something were insufficient facts to establish reasonable suspicion of criminal activity. The district

---

[1] Pursuant to <u>Miranda v. Arizona</u>, 384 U.S. 436, 469-71, 86 S. Ct. 1602, 1625–26 (1966).

court noted that the Government had failed to show that the complex was in a high crime area. Finally, the district court also found that the officers' subsequent search of Brown's car and warrantless search of Brown's apartment were likewise violative of the Fourth Amendment, because there was no evidence of a break in the chain of events sufficient to refute the inference that the evidence obtained was a result of the initial constitutional violation.

## II. STANDARD OF REVIEW

When reviewing a ruling on a motion to suppress, we review questions of law <u>de novo</u> and findings of fact for clear error. <u>United States. v. Grant</u>, 349 F.3d 192, 195 (5th Cir. 2003). We view the evidence in the light most favorable to the party that prevailed in the district court. <u>Id.</u>

## III. DISCUSSION

### A. The <u>Terry</u> Standard

We have articulated three tiers of police encounters with the public: (1) simple questioning of a citizen without detention; (2) a temporary seizure of the citizen if the officer has reasonable suspicion based upon articulable facts that the person has committed or is about to commit a crime; and (3) an arrest of a citizen if the officer has probable cause to believe a crime has been committed. <u>United States v. Zukas</u>, 843 F.2d 179, 181-82 (5th Cir. 1988). Brown conceded at oral argument that the officers' initial approach of the car falls within the first tier of police encounters — simple questioning by the police — which is not a "seizure" implicating the Fourth Amendment and thus

4

needs no justification on an articulated basis for suspicion.

The second sort of police encounter is governed by the principles of Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868 (1968). Under Terry, officers may briefly detain pedestrians and motorists in public, even without probable cause to arrest them, so long as the officers have reasonable suspicion to believe that criminal activity is afoot. United States v. Baker, 47 F.3d 691, 693 (5th Cir. 1995). Police officers must base their reasonable suspicion on "specific and articulable facts," not merely "inarticulate hunches" of wrongdoing. Terry, 392 U.S. at 21, 22. Terry also instructs that a police officer "who reasonably believes that he is dealing with armed and dangerous individuals may conduct a limited protective search for weapons." Baker, 47 F.3d at 693. For purposes of a Terry pat-down, "[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Id. Where an initial stop and pat-down of an occupant of a car are justified under Terry, a search of the car for weapons is also a valid "Terry pat-down" of the car. See United States v. Wallen, 388 F.3d 161, 166 (5th Cir. 2004) (upholding protective sweep of car as Terry pat-down under the rationale set forth in Michigan v. Long, 463 U.S. 1032, 103 S. Ct. 3469 (1983)).

The only question in this case is whether, having legitimately approached the car for the purpose of advising the occupants about the anti-loitering policy, the officers lacked reasonable suspicion either that criminal activity was afoot or that the car's

5

occupants may be armed when the officers conducted a <u>Terry</u> pat-down of Brown and his car. As discussed below, we conclude that reasonable suspicion justified the officers' actions.

B. Brown's actions raised reasonable suspicion under the circumstances

Officer Thompson testified that as he and his partner, Officer Busbin, approached the front of Brown's car, "[w]e observed both the driver, which was Jeremy Brown, and [his passenger] slumped down in their seats. When they realized that the police were walking towards them, both of them appeared to go underneath the driver's seat and the passenger's seat suspiciously." Officer Busbin testified that, upon approach to Brown's car, he observed Brown and Chavez "begin to slump down in their seats, and it appeared to us that they were trying to conceal something underneath their seats." Officer Busbin further stated that, upon spotting the police, Brown and Chavez "started going up under the seats" and that they each had "both hands leaning forward, and both hands going underneath the seat."

We have found that similar behavior in similar circumstances may support an investigatory stop. In <u>United States v. Watson</u>, 953 F.2d 895, 896-97 (5th Cir. 1992), we held that two police officers, having approached a car parked in an abandoned service station and observed Watson "move his body as if to conceal or retrieve something on the car floor," were justified in ordering the defendant and his passenger out of the car while a visual inspection of the car's interior (which revealed a pistol) was conducted. In <u>United States v. Colin</u>, 928 F.2d 676, 678 (5th Cir. 1991), a police officer, who had

6

pulled over a car for a traffic violation, observed the front-seat passenger engaging in "some unusual movements" by "stooping down and moving from side to side." We held that this behavior supported a reasonable belief by the officer that the passenger was armed and dangerous and that the officer was thus justified in ordering the passenger out of the car and frisking him. Id. at 678.

### C. The border patrol cases are inapplicable

In granting Brown's motion to suppress, the district court relied on a series of border patrol cases in which we have held that ducking or slouching behavior of the occupants of a car was insufficient, in itself, to create a reasonable suspicion that criminal activity was afoot.[2] In each of the cases relied upon by the district court, we found that, under the factors set forth in United States v. Brigoni-Ponce, 422 U.S. 873, 884-85, 95 S. Ct. 2574, 2582 (1975), for determining whether a roving patrol stop is justified,[3] the mere slouching or "hunkering down" of auto occupants did not warrant a stop. Orona-Sanchez, 648 F.2d at 1042; Pena-Cantu, 639 F.2d at 1229-30; Pacheco, 617 F.2d 86-87.

The test set forth in Brigoni-Ponce does not apply in non-border patrol cases

---

[2] The district court cited United States v. Orona-Sanchez, 648 F.2d 1039, 1042 (5th Cir. Unit A June 1981); United States v. Pena-Cantu, 639 F.2d 1228, 1229-30 (5th Cir. Unit A Mar. 1981); and United States v. Pacheco, 617 F.2d 84, 86-87 (5th Cir. 1980).

[3] The factors to be considered are: (1) characteristics of the area in which a vehicle is encountered, including proximity to the border; (2) history of illegal alien traffic patterns, and history of illegal alien traffic; (3) type and appearance of vehicle, including whether it appears heavily loaded; (4) behavior of the driver; and (5) number, appearance, and behavior of the passengers.

7

because the slouching down of an occupant of a vehicle does not have the same import outside the border context. In the border context, the suspected criminal activity is illegal presence in the United States. In the above-cited cases, we have reasoned that the act of slouching alone is not a sufficient indicator of an attempt to avoid detection of one's presence, a rationale that is inapplicable to this case. We agree with the district court that mere slouching in an automobile, absent any other suspicious circumstances, is likewise insufficient to warrant an investigatory stop outside of the border context. However, the behavior reported here was something more. The sort of deliberate, furtive actions — the apparent ducking and hiding of objects — that the officers observed reasonably aroused further suspicion beyond a mere "hunch" and, under Watson and Colin, supported the conduct of a Terry pat-down.

We do not find that the Government was required to show that the incident occurred in a high crime area. While area crime rates may be a factor for consideration, in the Terry context, "[r]easonable suspicion cannot be reduced to a neat set of legal rules, but must be determined by looking to the totality of the circumstances — the whole picture." United States v. Jordan, 232 F.3d 447, 449 (5th Cir. 2000) (internal quotations and citation omitted). Here, the officers testified that the apartment complex parking lot had a history of criminal activity and that this was the reason they had been engaged by the complex owners. Taken together with the actions of Brown and his passenger upon spotting the police, we conclude that the officers were justified in suspecting that criminal activity was afoot, and therefore in investigating further.

8

### D. No formulaic approach was required of the officers

Brown also argues that, even if sufficient grounds existed for the officers to conduct a <u>Terry</u> stop, there were insufficient grounds to conduct any search. Brown asserts that if the officers were concerned about the presence of a gun, they should not have searched his person until a visual inspection was made of the car. In support, Brown cites <u>United States v. Watson</u>, in which, after observing the motions of the accused to hide or retrieve something from under the seat of the vehicle, officers order the occupants out to be watched by one officer while the second conducted a visual inspection of the car; and no further search of the accused person or property was conducted until after a pistol was observed in plain view inside the vehicle. 953 F.2d 895, 896 (5th Cir. 1992). However, as commentators recognize, once the circumstances reasonably warrant officers in believing that weapons may be inside the automobile involved in a <u>Terry</u> stop, the Supreme Court does not require a formulaic approach by the officers to overcome the perceived danger. <u>See</u> WAYNE R. LAFAVE ET AL., 2 CRIM. PROC. § 3.8 (2d ed. 2006) (citing <u>Michigan v. Long</u>, 463 U.S. 1032, 103 S. Ct. 3469 (1983) (declaring that officers are not required to "adopt alternate means to insure their safety in order to avoid the intrusion involved in a <u>Terry</u> encounter.")).

### IV.

Because the initial stop and pat-down of Brown were justified under <u>Terry</u>, as interpreted by this court in <u>Watson</u> and <u>Colin</u>, the subsequent search of the car for weapons was a valid "<u>Terry</u> pat-down" of the car under <u>Wallen</u>. Because the <u>Terry</u> stop

9

was valid, Brown's subsequent consent to search his apartment was not tainted by unconstitutional seizure. Accordingly, the evidence found pursuant to the <u>Terry</u> stop and subsequent consensual search of Brown's apartment was rightfully obtained and should be available to the Government as evidence at trial.

REVERSED AND REMANDED.