# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
May 13, 2022

Lyle W. Cayce
Clerk

No. 21-20150

United States of America,

*Plaintiff—Appellee*,

*versus*

Erik Rodriguez,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
No. 4:19-CR-891

Before Davis, Smith, and Engelhardt, *Circuit Judges*.
Jerry E. Smith, *Circuit Judge*:

Before the court is Erik Rodriguez's motion to suppress a revolver found in the pocket of a jacket he left in a friend's car. That motion presents not only novel and difficult questions of Fourth Amendment standing but also far more prosaic questions of Fourth Amendment substance. The questions in the latter category suffice to resolve the case, so that is where we turn. Whether a defendant in Rodriguez's position had Fourth Amendment standing to challenge the search in question will wait for another day. Instead, we affirm on the ground that the search was a legal protective sweep.

I.

Rodriguez was a passenger in a car driven by his friend. Police noticed the car straddling two lanes of traffic, so they began to follow it. They observed that there were two men in the car and that both were wearing hooded jackets. The passengers appeared intently interested in the police car and were shifting in their seats. The officers found that activity suspicious. Having already observed a traffic violation, they decided to execute a stop.

The police activated their lights, but at first the vehicle did not pull over. Instead, it passed two driveways before pulling into a third—an apartment complex with a reputation for gang activity. Once in the complex, the vehicle continued to roll forward before stopping after a blip from the officers' siren. As the officers exited their cruiser and approached the vehicle, the driver initially opened his door, then remained in the car and rolled down his windows, as instructed. The officers noticed an infant in the back seat.

The officers removed both Rodriguez and the driver. The driver was still wearing his jacket, but Rodriguez was no longer wearing his—even though the temperature was in the forties. Neither man had a driver's license, and the driver admitted that one of his IDs was fake. The officers thus detained both men and placed them, in handcuffs, in the back of their patrol car, even though Rodriguez was not suspected of any crime.

As one officer ran the driver's IDs, the other searched the vehicle's passenger compartment. He discovered a jacket on the backseat floorboard—its color matched Rodriguez's pants, but the officer testified that he did not immediately "put two and two together" and consider that the jacket belonged to Rodriguez. The officer found a revolver in the jacket's pocket.

Rodriguez and the driver gave the officers permission to use their phones to call family members to pick up the car and baby. But in addition to making the calls, an officer also, without permission, went through the

No. 21-20150

phones.  As he did, he observed "MS-13 material" that appeared to implicate Rodriguez.  Both Rodriguez and the driver were arrested for state crimes—the driver for tampering with a government document and Rodriguez for unlawfully carrying a weapon in connection with gang activity.

Rodriguez turned out to be an illegal alien, meaning that, regardless of any connection to MS-13 or other gangs, his possession of the revolver was a federal crime.  He was thus charged with violating 18 U.S.C. § 922(g)(5)(A).

Rodriguez filed a motion to suppress, maintaining that the search of the vehicle violated his Fourth Amendment rights and that his questioning during the stop violated his Fifth and Sixth Amendment rights.  After an evidentiary hearing, the district court ordered the suppression of statements made by Rodriguez, reasoning that they were taken in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966).  It also suppressed evidence gained from the search of Rodriguez's phone, which the court concluded violated *Riley v. California*, 573 U.S. 373 (2014).  But it did not suppress the gun—the court ruled that the stop of the vehicle and detention of the passengers had been reasonable, and Rodriguez "neither had nor claimed any ownership or possessory interest or reasonable expectation of privacy in the" vehicle because he had been merely a passenger.  Rodriguez thus had no standing to challenge the search.

With the gun admitted, Rodriguez pleaded guilty and was sentenced to time served plus three years' supervised release.  Rodriguez appeals the conviction, maintaining that the district court erred by denying his motion to suppress.

## II.

"When reviewing the denial of a motion to suppress evidence, this court reviews the district court's factual findings for clear error and the district court's conclusions . . . de novo." *United States v. Perez*, 484 F.3d 735,

3

No. 21-20150

739 (5th Cir. 2007).  Rodriguez does not challenge any of the district court's factfindings.  Thus, as the government concedes, the only questions before us are legal ones that we review de novo.

III.

A Fourth Amendment inquiry typically proceeds in two parts:  A court first asks whether the defendant had standing to challenge the search and then, if the answer is yes, asks whether the search was reasonable.  In other contexts, that order would be not just typical but mandatory.  Standing is a matter of jurisdiction, and courts must assess their jurisdiction before turning to the merits.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

But Fourth Amendment standing is a different matter.  "The concept of standing in Fourth Amendment cases can be a useful shorthand . . . but it should not be confused with Article III standing . . . ."  *Byrd v. United States*, 138 S. Ct. 1518, 1530 (2018).  To the contrary, Fourth Amendment standing "is not a jurisdictional question and hence need not be addressed before addressing other aspects of the merits of a Fourth Amendment claim."  *Id.*

Thus, we are not bound to decide whether Rodriguez had standing to challenge the search of his jacket.  Instead, the usual rule applies, and we may affirm the judgment for any reason supported by the record.  *See Palmer ex rel. Palmer v. Waxahachie Indep. Sch. Dist.*, 579 F.3d 502, 506 (5th Cir. 2009); *United States v. Ibarra-Sanchez*, 199 F.3d 753, 758 (5th Cir. 1999).  Thus, we may affirm if we conclude, as we do, that that search was lawful.

That course is particularly appropriate here in light of the novelty of the Fourth Amendment standing questions.  Rodriguez presents two theories in support of Fourth Amendment standing, and precedent does not definitively answer either.

First, Rodriguez maintains that he had a reasonable expectation of

4

privacy in the jacket. "Typically," a passenger in a car, as distinct from the driver, "lacks standing to complain of its search." *United States v. Roberson*, 6 F.3d 1088, 1091 (5th Cir. 1993). But this circuit has recognized an exception for a passenger's personal luggage. "The owner of a suitcase located in another's car may have a legitimate expectation of privacy with respect to the contents of his suitcase." *United States v. Buchner*, 7 F.3d 1149, 1154 (5th Cir. 1993). Rodriguez maintains that the same logic extends to the pockets of the jacket he had removed and left in the vehicle. But jackets are not exactly like suitcases, and neither party, nor this court, has located any precedent squarely addressing Rodriguez's theory.[1]

Second, Rodriguez maintains that he has standing to challenge the search because it qualifies as a trespass. Because he did not advance that theory before the district court, it is subject to the demanding standard of plain-error review. *See Puckett v. United States*, 556 U.S. 129, 135 (2009).

Rodriguez relies primarily on *United States v. Richmond*, 915 F.3d 352 (5th Cir. 2019), which itself interprets *United States v. Jones*, 565 U.S. 400 (2012). Those cases hold that, in addition to the more familiar reasonable-expectation-of-privacy test described above, a defendant can show Fourth Amendment standing if the government has committed a common-law tres-

---

[1] There are a few non-binding cases addressing whether individuals have a reasonable expectation in jackets left in places they do not own, but they all depend on facts significantly different from those at issue here. In *United States v. Alewelt*, 532 F.2d 1165, 1168 (7th Cir. 1976), the court held that the defendant had relinquished his reasonable expectation of privacy by leaving his jacket on a coat rack in a public hall. The court in *United States v. Adams*, 583 F.3d 457, 465 (6th Cir. 2009), held that that defendant had relinquished his expectation by leaving his jacket on the floor of a crowded hotel room. The court in *United States v. Keith*, No. 08-CR-360, 2010 WL 58988, at *10 (N.D. Ohio Jan. 6, 2010), described the question as "an extremely close call." That court also ruled against the defendant, noting that, though the jacket was in the house where he lived, his godmother, who had consented to the search, regularly handled the jacket and checked its pockets. *See id.*

No. 21-20150

pass as part of an investigation. *See id.* at 408–09. But the recent vintage of those cases leaves us with few authorities interpreting them, and we do not have the benefit of the district court's assessment.

All of that is to say that the question of Rodriguez's standing is difficult. Admittedly, "judges may not invoke judicial modesty to avoid difficult questions." *Holder v. Hall*, 512 U.S. 874, 966 (Stevens, J., dissenting). But neither is it "the role of the federal courts to answer legal questions unless specific cases need answers." *Greenless v. Almond*, 277 F.3d 601, 607 (1st Cir. 2002). In keeping with that principle, we reserve for another day the theories of Fourth Amendment standing presented by Rodriguez; we turn instead to a question to which our precedents provide a more certain answer.

IV.

Turning to the merits of the search of Rodriguez's jacket, we conclude that the search was reasonable. Specifically, it was justified by the protective-sweep exception to the Fourth Amendment's warrant requirement.[2]

The protective-sweep exception was first articulated in the vehicular context in *Michigan v. Long*, 463 U.S. 1032 (1983). The Court allowed police "to conduct an area search of the passenger compartment [of a vehicle] to uncover weapons, as long as they possess an articulable and objectively reasonable belief that the suspect is potentially dangerous." *Id.* at 1051. Such searches are permissible even if a suspect has been removed from the vehicle—as long as he "is not placed under arrest, he will be permitted to reenter his automobile, and he will then have access to any weapons inside." *Id.* at 1052. That logic controls even if the suspect has been handcuffed. *United States v. Wallen*, 388 F.3d 161, 166 (5th Cir. 2004).

---

[2] We do not address whether the search might also have been valid under a different exception to the Fourth Amendment's warrant requirement.

The protective-sweep exception survived *Arizona v. Gant*, 556 U.S. 332 (2009), which addressed the related subject of searches of a vehicle incident to an arrest. That decision took a narrow view of the proper scope of such searches, but it preserved *Long* as a separate exception applying "under additional circumstances when safety or evidentiary concerns demand." *Gant*, 556 U.S. at 346.

While *Gant* searches and *Long* searches are both justified by the interest in officer safety, *see Gant*, 556 U.S. at 338; *Long*, 463 U.S. at 1049, they are nonetheless distinct. *Long* searches are premised on the possibility that a suspect might return to a vehicle, *see Long*, 463 U.S. at 1052, but *Gant* searches occur when a suspect is being placed under arrest and is therefore unlikely to return to the vehicle, *see Gant*, 556 U.S. at 340–41. *Long*'s roots lie not in the search-incident-to-arrest exception but, instead, in the framework established by *Terry v. Ohio*, 392 U.S. 1 (1968). *See, e.g.*, *United States v. Baker*, 47 F.3d 691, 693 (5th Cir. 1995). Thus, post-*Gant* decisions of this court have continued to apply *Long*, including to situations in which a suspect is handcuffed at the time of the search. *See Davila v. United States*, 713 F.3d 248, 259 (5th Cir. 2013); *United States v. Edmond*, 787 F. App'x 258, 259 (5th Cir. 2019) (per curiam).

The officers did not arrest Rodriguez until they had discovered the gun. To be lawful, a search of his property would thus have to have been a *Long* search rather than a *Gant* search.

For a *Long* search to be valid, an officer must have "a reasonable suspicion that the person poses a danger and may gain immediate control of weapons." *Wallen*, 388 F.3d at 164. That suspicion must be based on "specific and articulable facts." *Long*, 463 U.S. at 1049 (quoting *Terry*, 392 U.S. at 21).

Our precedents have identified several circumstances that can help

clear that bar. Most relevant here, "[t]hat a person is stooping down and moving from side to side in the front seat of an automobile may form the basis of [a] reasonable belief" that he is armed and dangerous. *United States v. Colin*, 928 F.2d 676, 678 (5th Cir. 1991) (quotation omitted); *see also United States v. Brown*, 209 F. App'x 450, 453 (5th Cir. 2006) (per curiam).

The officers observed both Rodriguez and the driver moving within their seats apparently in response to the presence of police. Rodriguez was shifting "[a]s if [he was] removing a jacket." That observation alone was in the direction of creating a reasonable suspicion that Rodriguez was concealing a weapon, thereby justifying a *Long* search before Rodriguez was released.

And there are more facts pointing in the same direction. The vehicle passed other driveways and stopped in an apartment complex associated with gang activity. Once within that complex, it continued to roll forward rather than stop immediately. The driver initially opened his door as the officers approached. All of those factors could have contributed to a reasonable belief on the part of the officers that they were in danger and could take steps to protect themselves.

Rodriguez counters that there are insufficient factual findings to assess the validity of a protective sweep, and so remand is appropriate. We disagree. In the absence of formal factfindings justifying the denial of a motion to suppress, remand may be appropriate where the record provides a basis to doubt the district court's decision, such as a mistaken legal assumption or express refusal to resolve certain facts. *See United States v. Guzman*, 739 F.3d 241, 247–48 (5th Cir. 2014). But "ordinarily," we affirm if the evidence in the record allows us to do so, as it does here. *United States v. Staggers*, 961 F.3d 745, 758 (5th Cir. 2020). Though the district court did not specifically identify the above points as factual findings, Rodriguez has not expressly disputed any of them. The factfindings the district court did make do not suggest that

No. 21-20150

it doubted the officers' credibility or that it was deliberately avoiding the question of danger. We thus adopt the ordinary course and look to evidence outside the formal factfindings to affirm the judgment.

Rather than challenge facts indicating the situation's dangerousness, Rodriguez seeks to rebut the protective-sweep theory by questioning whether he could have taken control of the weapon in the car. He states that when the sweep occurred, "there was no realistic possibility that either [Rodriguez or the driver] . . . would have been permitted to reenter the [vehicle] at any point during the encounter." To be sure, the driver was already known to have been driving without a license and to have a fake ID, so even if he had not been formally arrested when the search occurred, the police could have expected that he soon would be.

But Rodriguez could easily have returned to the car. As the district court found, he had only been detained, not arrested. Though police were later forced to impound the vehicle, at the time of the search they still hoped to release it to the driver's wife. Until the gun was found, there was no reason to doubt that Rodriguez (though he did not have a driver's license) would soon be allowed to return to the car as a passenger and drive away.

Rodriguez responds that by that point, the "encounter" between him and law enforcement would be over, obviating any concern for officer safety. But an encounter between civilians and law enforcement begins before, and thus can continue after, a suspect has been subjected to a search or seizure. *See, e.g.*, *United States v. Flowers*, 6 F. 4th 651, 655 (5th Cir. 2021). *Long* and its progeny are premised on the understanding that a police officer may still be in danger after a suspect is released and allowed to return to his car. *See Long*, 463 U.S. at 1052. Rodriguez points to no authority questioning that understanding.

The officers had a reasonable basis to believe that Rodriguez might

No. 21-20150

return to the vehicle and access a weapon. Under *Long*, they were thus authorized to conduct a protective sweep of the passenger compartment. Because the search was legal, the question of Rodriguez's standing to challenge it is immaterial. Rodriguez's conviction and the denial of his motion to suppress are AFFIRMED.