# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 7, 2026

Lyle W. Cayce
Clerk

No. 24-11115

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

TONY LEE JOHNSON,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 5:23-CR-114-1

Before ELROD, *Chief Judge*, and CLEMENT and HAYNES, *Circuit Judges*.
EDITH BROWN CLEMENT, *Circuit Judge*:

Tony Lee Johnson was convicted of possessing a firearm as a convicted felon. Officers had arrested Johnson for violating the conditions of his supervised release, and during a warrantless search of Johnson's vehicle after his arrest, they found a handgun in the center console. We must decide whether this warrantless search violated the Fourth Amendment. The government asserts that the search was justified under the protective-sweep exception to the Fourth Amendment's warrant requirement because Johnson's romantic partner, Beatrice Simmons, was on the scene and poised to regain access to Johnson's vehicle. Because the officers observed nothing

No. 24-11115

to suggest that Simmons was potentially dangerous, we hold that her presence did not justify the warrantless search of Johnson's vehicle.

I

On July 26, 2023, a magistrate judge in the Northern District of Texas issued a warrant for Johnson's arrest. Johnson had failed a series of drug tests in violation of the terms of his supervised release; he was serving a 2006 sentence for drug and aiding-and-abetting offenses. The United States Marshals Service partnered with the Lubbock Police Department ("LPD") to carry out Johnson's arrest. During a pre-arrest investigation, Officer Todd Pringle—an LPD detective who also served as a task force officer with the U.S. Marshals Service's North Texas Fugitive Task Force—reviewed Johnson's criminal history[1] and learned that Johnson was a Bloods gang member and the primary suspect in an ongoing LPD homicide investigation. Officer Pringle also discovered that Johnson lived with his girlfriend, Beatrice Simmons. LPD detectives informed Officer Pringle that Simmons "had expressed [to officers], at one point in time, that she was a felon and either on probation or on parole." But Officer Pringle was unable to confirm that she had a felony conviction, and he did not ask the detectives for more details. LPD detectives advised Officer Pringle that they wanted to speak with Simmons about the homicide, though they did not suspect Simmons was involved.

Two days later, officers made their move. After conducting surveillance and positively identifying Johnson at his known address, at about two o'clock in the afternoon, officers blocked Johnson's Chevrolet Malibu as he backed out of his driveway into the public roadway. Simmons was riding

---

[1] Johnson's presentence investigation report reflects, among other offenses, a history of drug possession, domestic assault, and aggravated assault with a firearm.

2

in the passenger seat at the time. Johnson began exiting the vehicle before officers ordered him to do so, and he closed the door after exiting. Officers then arrested Johnson and removed Simmons from the vehicle, detaining her nearby in the driveway. Simmons was neither arrested nor placed in handcuffs. Johnson instructed Simmons to pull the vehicle back in the yard and told Officer Pringle that he did not consent to any searches. Officer Pringle responded: "It don't matter; you're arrested." Johnson replied: "It's not my car; it's [Simmons's] car."

Johnson had now succeeded in arousing Officer Pringle's suspicions. Believing that Johnson was hiding something in the vehicle, Officer Pringle conducted a cursory sweep of the driver's seat and middle console because those were the areas "in the immediate reach of the driver." Officer Pringle discovered a red bandana tied to the steering wheel[2]—a known hallmark of Bloods gang membership. He also found a handgun loaded with a full magazine in the center console. The district court found that the search lasted approximately twenty-four seconds. In his report, Officer Pringle identified this search as a search incident to arrest. After Officer Pringle discovered the firearm, he handcuffed Simmons. Simmons told Officer Pringle that she did not know about the handgun. She also confirmed that she was on parole for a 2003 drug offense.

Johnson was charged with one count of possessing a firearm as a convicted felon under 18 U.S.C. §§ 922(g)(1) and 924(a)(8). He filed a motion to suppress the loaded handgun, claiming that Officer Pringle violated his Fourth Amendment rights. After holding a hearing on the motion, the district court denied it. The court held that Officer Pringle's

---

[2] The district court noted that the bandana "was in plain view, visible through the closed car door's window."

warrantless search of Johnson's vehicle was constitutional under the protective-sweep exception articulated in *Michigan v. Long*, 463 U.S. 1032 (1983), because Simmons posed a threat to officer safety. The court determined first that Johnson's behavior and criminal history gave rise to a reasonable suspicion that a weapon was hidden in the vehicle. But Johnson was no longer a threat to the officers at the time of the search because he was arrested and would not be permitted to return to his vehicle. Simmons, on the other hand, "was only temporarily detained[,] would be permitted to return to the vehicle," and "would have been able to access any weapon concealed within." Given Simmons's romantic relationship with Johnson, her criminal history, as well as, according to Officer Pringle, the likelihood that she would "react emotionally and unpredictably to Johnson's arrest," the district court deemed Simmons's presence at the scene a "dangerous situation" that authorized the protected sweep of the vehicle.

After the district court ruled on his motion to suppress, Johnson entered a conditional guilty plea, reserving the right to appeal the denial. The district court accepted the plea and sentenced Johnson to thirty-three months of imprisonment. Johnson timely appealed. The only issue before us is whether Officer Pringle's limited search of Johnson's vehicle was supported by reasonable suspicion.

## II

"When reviewing a district court's ruling on a motion to suppress, we review factual findings for clear error and legal conclusions *de novo*, viewing the evidence in the light most favorable to the prevailing party." *United States v. Keller*, 123 F.4th 264, 267 (5th Cir. 2024). The determination that an officer had reasonable suspicion is a legal conclusion reviewed *de novo*. *United States v. Martinez*, 102 F.4th 677, 683 (5th Cir. 2024). "The district court's ruling should be upheld 'if there is any reasonable view of the evidence to

support it.'" *United States v. Massi*, 761 F.3d 512, 520 (5th Cir. 2014) (quoting *United States v. Michelletti*, 13 F.3d 838, 841 (5th Cir. 1994) (en banc)).

## III

The Fourth Amendment enshrines "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. Generally, police must obtain a warrant before conducting a search. *Kentucky v. King*, 563 U.S. 452, 459 (2011). But the Supreme Court has carved out several exceptions to the warrant requirement, recognizing that some "circumstances may render a warrantless search or seizure reasonable." *Illinois v. McArthur*, 531 U.S. 326, 330 (2001). Still, a warrantless search is presumptively unconstitutional, and the burden to justify it rests with the government. *United States v. Wallen*, 388 F.3d 161, 164 (5th Cir. 2004). Where the government falls short, the evidence it obtained from a warrantless search "generally must be suppressed." *United States v. Alvarado-Zarza*, 782 F.3d 246, 249 (5th Cir. 2015).

Here, the government argues that the warrantless search of Johnson's vehicle was justified under the protective-sweep exception. In *Michigan v. Long*, the Supreme Court extended "the protective frisk of a person" authorized in *Terry v. Ohio*, 392 U.S. 1 (1968), to vehicles. 463 U.S. at 1045, 1049; *see also United States v. Ibarra-Sanchez*, 199 F.3d 753, 760 n.7 (5th Cir. 1999) (describing a *Long* search as a "*Terry* pat-down" of a vehicle). The Court began by highlighting that "investigative detentions involving suspects in vehicles are especially fraught with danger to police officers." *Long*, 463 U.S. at 1047. It ultimately held that police may search "the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden," if the officers reasonably believe "that the suspect is

dangerous and . . . may gain immediate control of weapons." *Id.* at 1049. This belief must be objectively reasonable, supported by "'specific and articulable facts'" and the rational inferences that can be drawn from those facts. *Id.* (quoting *Terry*, 392 U.S. at 21). "[I]ndividualized suspicion [is] required for an automobile search." *United States v. Hunt*, 253 F.3d 227, 232 (5th Cir. 2001); *see also Soukaneh v. Andrzejewski*, 112 F.4th 107, 125 n.12 (2d Cir. 2024) ("*Terry* requires reasonable, individualized suspicion before a frisk [of persons or areas] for weapons can be conducted." (quoting *Maryland v. Buie*, 494 U.S. 325, 334 n.2 (1990))).

Police may not conduct a *Long* search if the suspect has been arrested. *United States v. Rodriguez*, 33 F.4th 807, 812 (5th Cir. 2022) (citing *Long*, 463 U.S. at 1052). After all, once a suspect is in police custody, the risk that he "may gain immediate control of weapons" in his vehicle has subsided. *Long*, 463 U.S. at 1049. But when a suspect is only temporarily detained by police, that risk persists. He may "break away from police control" or "be permitted to reenter his automobile" and access any weapons that lie within. *Id.* at 1051–52. Accordingly, because Johnson was under arrest at the time of the search, he could not have gained immediate control of any weapons in the vehicle. But because Simmons was not under arrest, the search of Johnson's vehicle was justifiable if Officer Pringle reasonably believed that Simmons was potentially dangerous and had access to a weapon.

When reviewing an officer's conduct in this context, the "touchstone of our analysis" is reasonableness. *Pennsylvania v. Mimms*, 434 U.S. 106, 108–09 (1977) (per curiam). The core question is "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Long*, 463 U.S. at 1050. To answer it, courts look to the totality of the circumstances. *United States v. McKinney*, 980 F.3d 485, 491 (5th Cir. 2020).

No. 24-11115

IV

For Officer Pringle's protective sweep of Johnson's vehicle to be constitutional, Officer Pringle must have reasonably believed that Simmons was potentially dangerous and could have immediately accessed a weapon.[3]

Reasonable suspicion is a "low threshold." *United States v. Alvarez*, 40 F.4th 339, 343 (5th Cir. 2022). It requires only a "minimal level of objective justification." *INS v. Delgado*, 466 U.S. 210, 216–17 (1984). But more than a "mere hunch" is required. *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005); *see also United States v. McGregor*, 650 F.3d 813, 821 (1st Cir. 2011) ("No simple, mechanical formula tells us what reasonable suspicion is, though we know that it is less than probable cause and more than a naked hunch."). "[R]easonable suspicion must be based on commonsense judgments and inferences about human behavior." *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000).

Johnson does not challenge whether it was objectively reasonable for Officer Pringle to believe that a weapon was hidden in the vehicle. Nor could he. Like the district court, we have no trouble arriving at this conclusion,

---

[3] Johnson correctly acknowledges that this inquiry does not turn on Officer Pringle's subjective beliefs at the time of the search. Nevertheless, he criticizes Officer Pringle for misunderstanding the law, and he suggests that we invalidate the search because Officer Pringle could not have been *actually* assessing Simmons's dangerousness given that his report indicated this was a search incident to arrest. But the Supreme Court and this court have made clear that Fourth Amendment reasonableness is an objective standard that does not turn on the officer's subjective intent or fear. *Wren v. United States*, 517 U.S. 806, 813 (1996) ("Not only have we never held . . . that an officer's motivation invalidates objectively justifiable behavior under the Fourth Amendment; but we have repeatedly held and asserted the contrary."); *King*, 563 U.S. at 464 (concluding that "a subjective approach" fundamentally conflicts "with [the Supreme Court's] Fourth Amendment jurisprudence"); *Wallen*, 388 F.3d at 167 & n.7 ("[T]here is no legal requirement that an officer subjectively fear for his own safety before engaging in [a *Long*] search." (citing *United States v. Baker*, 47 F.3d 691, 694 (5th Cir. 1995)).

based on Johnson's criminal history, gang affiliation, suspected involvement in a murder, and his suspicious behavior after being stopped by officers. Johnson began exiting the vehicle before officers directed him to, closed the door after exiting the vehicle, instructed Simmons to pull the vehicle back in the yard, told Officer Pringle he did not consent to any searches, and claimed Simmons owned the vehicle. On these facts, it was reasonable for Officer Pringle to believe the vehicle harbored a weapon. And because Simmons was not arrested, she could have "gain[ed] immediate control" of any such weapon and used it against the officers. *Long*, 463 U.S. at 1049.

The parties' chief disagreement is whether it was objectively reasonable for Officer Pringle to believe that Simmons was potentially dangerous. The district court tethered its dangerousness finding to Simmons's intimate relationship with Johnson, a convicted felon, and her previous admission of an unspecified felony. In the district court's view, these facts, together with Simmons's presence at the scene of her boyfriend's arrest, indicated that she posed a significant threat to the officers and justified the *Long* search.

Johnson argues that these facts were not enough to support a reasonable belief that Simmons might have been dangerous.

Simmons's criminal record and her relationship with Johnson are both relevant considerations in the reasonable-suspicion analysis. *See United States v. Gonzalez*, 328 F.3d 755, 758 (5th Cir. 2003) (considering the defendant's arrest history as an articulable fact to support reasonable suspicion); *United States v. Silva*, 957 F.2d 157, 161 (5th Cir. 1992) ("[A] suspect's companionship with or propinquity to an individual independently suspected of criminal activity is a factor to be considered in assessing the reasonableness of a seizure."). So too are Officer Pringle's inferences and deductions based on his "own experience and specialized training." *United*

No. 24-11115

*States v. Arvizu*, 534 U.S. 266, 273 (2002). Simmons was present during and witnessed Johnson's arrest, and Officer Pringle testified that, based on his seventeen years of experience, a person is more likely to interfere with the arrest of her romantic partner because "emotions run high" in those situations.

Johnson submits that these facts are not inherently suspicious, and the aggregation of non-suspicious facts cannot give rise to reasonable suspicion. A host of our cases contravenes his argument. We have repeatedly stressed that seemingly innocent facts can produce reasonable suspicion when viewed collectively. *McKinney*, 980 F.3d at 491; *Alvarez*, 40 F.4th at 346; *United States v. Roper*, 63 F.4th 473, 477 (5th Cir. 2023) (per curiam); *United States v. Alkheqani*, 78 F.4th 707, 716 (5th Cir. 2023); *United States v. Wilson*, 143 F.4th 647, 659 (5th Cir. 2025). These decisions align with *Terry*, which involved "a series of acts, each of them perhaps innocent in itself, but which taken together warranted further investigation." 392 U.S. at 22. In any event, whether each fact is independently suspicious is irrelevant to our analysis. The question is, taken together, were they enough to justify the search?[4]

---

[4] Johnson contends that Simmons's criminal record adds minimal weight to the analysis because Officer Pringle knew too little for it to inform his suspicion that Simmons might have been dangerous. Officer Pringle's knowledge extended only as far as these words from an LPD detective: Simmons "had expressed, at one point in time, that she was a felon and either on probation or on parole." Again, *Long* requires "'specific and articulable facts'" to justify a protective search. 463 U.S. at 1049 (quoting *Terry*, 392 U.S. at 21); *see also Estep v. Dallas Cnty.*, 310 F.3d 353, 361 (5th Cir. 2002) ("An officer can conduct a *Long* 'frisk' of a vehicle based on information possessed by another officer. However, it is not reasonable for an officer to conclude that it is lawful to make such a search when his fellow officer does not provide him with any specific articulable facts from which a reasonable officer could think he was in danger."). It stands to reason then, for something like a prior criminal record, the less the officer knows, the less water it holds. Prior to the search, Officer Pringle had no more reason to suspect Simmons previously committed tax fraud or perjury than some serious violent offense. He also was unaware of the timing of Simmons's conviction.

The answer is no. Without more, Simmons's unspecified felony record, intimate association with a convicted felon, and her presence during Johnson's arrest did not justify the protective sweep under *Long*. For an officer to reasonably believe that a suspect is potentially dangerous, the officer must point to some fact contemporaneous with or arising out of the police encounter that gives rise to that belief. Here, the government has identified no facts indicating that Simmons might have retrieved a weapon from the vehicle and attacked the officers. She did not, for example, disobey the officer's instructions, display any hostility toward the officers, or motion toward the vehicle when Johnson encouraged her to return it to the driveway.

A point of clarification. We do not mean to suggest that the officer conducting the protective search must always personally observe some contemporaneous fact. Indeed, "[r]easonable suspicion can be formed by a confidential informant's tip so long as the information is marked by "'indicia of reliability.'" *United States v. Powell*, 732 F.3d 361, 369 (5th Cir. 2013) (quoting *Adams v. Williams*, 407 U.S. 143, 147 (1972)). Reasonable suspicion "can also arise from the 'collective knowledge' of law enforcement entities, so long as that knowledge gives rise to reasonable suspicion and was communicated between those entities at the time of the stop." *Massi*, 761 F.3d at 521 (quoting *Ibarra-Sanchez*, 199 F.3d at 759–60). But this is merely an epistemic point. Reasonable suspicion is calculated by reviewing the "facts known to the officer at the time" of the search. *United States v. Vickers*, 540 F.3d 356, 361 (5th Cir. 2008). The officer must simply be aware of some contemporaneous fact that forms part of the totality of the circumstances justifying protective search.

The Supreme Court did not expressly hold in *Terry* or *Long* that contemporaneous facts are necessary for officers to reasonably believe that their safety is threatened, but this requirement is inherent in the very nature of a *Terry* or *Long* search. After all, *Terry*'s scope was clear—the Court was

contemplating "necessarily swift action predicated upon the *on-the-spot observations* of the officer on the beat." 392 U.S. at 20 (emphasis added). The Court's central holding was that a protective frisk of a suspect's outer clothing is permissible "where a police officer *observes unusual conduct* which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous." *Id.* at 30 (emphasis added). And remaining faithful to "the principles articulated in *Terry*," *Long* applied the same logic to a new factual situation—vehicular encounters.

The officers in *Terry* and *Long* observed the suspects exhibiting behavior they interpreted as suspicious under the facts available to the officers at the time.

The *Terry* officer witnessed a group of men survey a store and take turns repeatedly peering through a window. *Id.* at 6. The men later convened in front of the store, and the officer intervened because he suspected the men were planning a robbery (and, thus, also believed they might be armed). *Id.* When one of the men mumbled something to the officer, he commenced pat-down searches and discovered handguns on two of the men. *Id.* at 7. The Court upheld the search as constitutional, explaining that the officer reasonably believed the men were armed and dangerous, and that the search was necessary to protect the officer and neutralize the potential threat. *Id.* at 30.

*Long* upheld a protective search of a suspect's vehicle where, shortly after midnight, officers observed the defendant driving erratically at high speed before swerving into a ditch. 463 U.S. at 1035. The defendant struggled to respond to the officers' requests during questioning, and, as he suddenly started to make his way back to his vehicle, officers noticed a large hunting knife on the driver's side floorboard. *Id.* at 1036. The officers immediately

stopped the defendant, frisked him, and shined a flashlight into the vehicle to search for other weapons, only to discover an open pouch of marijuana on the front seat. *Id.*

Following *Terry*'s lead, we have observed that reasonable suspicion must be based, at least in part, on facts contemporaneous with the police encounter. *See, e.g.*, *Alvarez*, 40 F.4th at 350 ("Something more is needed—some *observed fact* beyond the person's mere presence that gives an officer reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity." (cleaned up) (emphasis added)); *United States v. Maestas*, 941 F.2d 273, 278 (5th Cir. 1991) ("[A] police officer's reasonable suspicions may arise from the rational inferences of what he *sees and hears*." (emphasis added)).

Consider the cases Johnson cites. In *United States v. Baker*, we upheld a protective search of a vehicle where, during a stop, the couple appeared extremely nervous, gave inconsistent accounts of their trip, and the officer observed a box of .9-millimeter bullets on the front floorboard the vehicle. 47 F.3d 691, 695 (5th Cir. 1995). The officer also asked where the gun was, and the wife answered that she did not know. *Id.* In *United States v. Silva*, we held that an officer had reasonable suspicion to detain the defendant where, in addition to being in the company of an individual upon whom the police were about to execute a felony arrest, the defendant fled the scene as officers approached him. 957 F.2d at 161. Reasoning that companionship with an arrestee is not independently sufficient to provide reasonable suspicion, we clarified that the totality of the facts—the defendant's presence with a suspected felon combined with his flight from the officers—justified the seizure. *Id.* at 160–61.

Nervousness, inconsistent answers to officers' questions, fleeing the scene—facts like these are missing here. Indeed, in *Silva*, the

contemporaneous fact (i.e., the defendant's flight from the officers) was necessary to the constitutionality of the protective sweep because the court determined that the defendant's association with a suspected felon—the only other fact the government articulated—was not enough on its own. *Id.*; *see also Ybarra v. Illinois*, 444 U.S. 85, 91 (1979). By contrast, as Johnson points out, when asked whether Officer Pringle observed any actions by Simmons that were suspicious or that might indicate she was potentially dangerous, he said no.

The government's cases too involved contemporaneous facts that justified the officers' safety concerns when considered in the totality. *See Wallen*, 388 F.3d at 165 (officer knew the defendant had three weapons in his truck and admitted he lacked documentation for them, the defendant disobeyed the officer's instructions to remain at the rear of his vehicle, the stop occurred at night, and the defendant was barefoot); *Rodriguez*, 33 F.4th at 813 (officers observed the vehicle enter an apartment complex associated with gang activity and "continue[] to roll forward rather than stop immediately," the driver opened his door when the officers approached the vehicle, and the defendant shifted "as if he was removing a jacket" (cleaned up)). As with *Baker* and *Silva*, these cases are notably different than the one before us. Officer Pringle witnessed nothing in the moment prior to his brief search of Johnson's vehicle to indicate that Simmons herself threatened his or his fellow officers' safety. We do not doubt that, after a seventeen-year career in law enforcement, Officer Pringle had good reason to believe Simmons was more likely than a passerby to interfere with her boyfriend's arrest. But nothing in the moment suggested that Simmons might do so.

The government also cites *United States v. Ducksworth*, No. 24-60473, 2025 WL 3292614 (5th Cir. Nov. 26, 2025) (publication forthcoming), *mandate held*, Dec. 16, 2025. In *Ducksworth*, an officer stopped a vehicle at night after observing it had a broken tag light. *Id.* at *1. The driver informed

the officer that he did not have identification or proof of insurance, so the officer directed him to step out of the vehicle. *Id.* The officer then frisked the driver and discovered a "hard, solid object" between his legs. *Id.* Initially, the driver denied that it was a weapon but later admitted it was a firearm. *Id.* This landed the driver in handcuffs in the police car. *Id.* The officer then turned his attention to the defendant, seated in the passenger seat of the vehicle. *Id.* He asked the defendant to step out, but he could not because he is paraplegic, so the officer asked him to raise his arms and began a pat-down search, unearthing a hidden firearm. *Id.* The defendant was arrested and charged with being a convicted felon in possession of a firearm. *Id.* After unsuccessfully moving to suppress the firearm, the defendant appealed, arguing that the officer's pat-down was unsupported by reasonable suspicion and the driver's dishonesty about possessing a firearm did not authorize the officer to search the defendant, relying principally on *Ybarra v. Illinois*. *Id.* at *2. The panel acknowledged *Ybarra*'s rejection of a "'guilt-by-association' theory" as the sole basis for reasonable suspicion but nevertheless affirmed the defendant's conviction because the totality of the circumstances produced reasonable suspicion that he was armed and dangerous. *Id.* at *3.

The government argues that *Ducksworth* is on all fours with this case because, like the passenger defendant there, Simmons shared a close connection with Johnson. And this connection, in the government's view, combined with "the other factors" present in this case gave rise to reasonable suspicion. But, importantly, *Ducksworth* considered a question that is not implicated here—"whether a driver's possession of a firearm can create reasonable suspicion to pat-down his passenger." *Id. Ducksworth* also involved key contemporaneous facts that are absent here. Perhaps the most obvious, unlike the *Ducksworth* driver, neither Johnson nor Simmons was discovered with a firearm on their person. Various other contemporaneous facts and situational realities enable us to distinguish *Ducksworth*. The officer

14

there observed the vehicle had a busted tag light, the driver did not have identification or proof of insurance and was discovered with a gun on his person after lying about it, the search occurred at night in a high-crime area, and the officer was alone and outnumbered. By contrast, the search here occurred in broad daylight, and Officer Pringle was accompanied by other officers from his task force. The *Ducksworth* police encounter was a traffic stop where the defendant remained in the vehicle. Here, the search began as a planned encounter and arrest and evolved into a *Long* search. The totality of the facts in *Ducksworth* justified the lone officer's fear for his safety. The totality of our facts does not yield the same result for Officer Pringle.

This is a unique case. With an arrest warrant in hand, the officers staked out Johnson's residence and executed the planned arrest once Johnson and his girlfriend entered his car and backed out of their driveway. The *Long* searches this court typically reviews begin as investigatory stops. In any event, our analysis is the same. We have already acknowledged—and Johnson has admitted—that Simmons's criminal record and close relationship with Johnson were properly considered by Officer Pringle in determining whether Simmons might have been dangerous. And the fact that Simmons was at the scene, a witness to Johnson's arrest, is an important situational reality. But without some fact contemporaneous to or arising out of Johnson's arrest that suggests Simmons was potentially dangerous, the totality of these circumstances could not have caused Officer Pringle to reasonably fear for his safety. Officer Pringle may have had a hunch that Simmons would act rashly after seeing her lover handcuffed, but this was not supported by individualized, reasonable suspicion. Thus, the protective sweep of Johnson's vehicle was unconstitutional.

No. 24-11115

V

Like many Fourth Amendment suppression cases, this is a difficult case, particularly because the defendant here was discovered unlawfully possessing a firearm. But it reaffirms the enduring strength of the Fourth Amendment's safeguard against unreasonable searches. Because we conclude that the warrantless search of Johnson's vehicle was not supported by reasonable suspicion, we REVERSE the district court's denial of Johnson's motion to suppress and VACATE his conviction and sentence.

HAYNES, *Circuit Judge*, dissenting:

I respectfully dissent from the decision to reverse the district court's denial of Johnson's motion to suppress and vacate his conviction and sentence.

I do not disagree with the focus being on whether Simmons was dangerous, since Johnson was already arrested, though his situation is not to be totally ignored given the relationship with Simmons and other matters. I strongly disagree with the majority opinion's conclusion that the Fourth Amendment analysis prescribed by *Terry* and *Long* requires some additional "fact contemporaneous" with the search that is not present here. *See Terry v. Ohio*, 392 U.S. 1, 20–21 (1968); *Michigan v. Long*, 463 U.S. 1032, 1049–50 (1983). The search at issue here was justified by the circumstances at hand.

The answer to the core question at issue—"whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger," *Long*, 463 U.S. at 1050 (citation omitted)—is "yes." It is important to remember that in this situation, there were limited time constraints and the need for the police officer to stay safe and not be shot by the arrested person's girlfriend. Thus, the reasonable suspicion is in that arena. While reasonable suspicion must be more than a "mere hunch," *United States v. Monsivais*, 848 F.3d 353, 357 (5th Cir. 2017) (citation omitted), it is, as the majority opinion admits, a "low threshold, requiring only a minimal level of objective justification," *United States v. Alvarez*, 40 F.4th 339, 345 (5th Cir. 2022) (citation modified). "There is no ready test for determining reasonableness other than by balancing the need

to search . . . against the invasion which the search . . . entails." *Terry*, 392 U.S. at 21 (citation modified). Instead, the "touchstone of our analysis" in reviewing an officer's conduct under the Fourth Amendment is reasonableness, *Pennsylvania v. Mimms*, 434 U.S. 106, 108–09 (1977) (per curiam), taking into account the "totality of the circumstances," *United States v. McKinney*, 980 F.3d 485, 491 (5th Cir. 2020). "[W]e view the evidence in the light most favorable to the party that prevailed in district court"—here, the Government. *Id*. The search here was very reasonable under the totality of the circumstances.

The majority opinion's main argument is that while Simmons's criminal history and relationship with Johnson may be considered, these facts do not give rise to the reasonable suspicion of dangerousness necessary to justify the search, even when paired with Simmons's presence at the scene of her boyfriend's arrest. Instead, it says, "[f]or an officer to reasonably believe that a suspect is potentially dangerous, the officer must point to some fact contemporaneous with or arising out of the police encounter that gives rise to that belief." While admitting that the Supreme Court has not held contemporaneous facts are required, the majority opinion argues that "this requirement is inherent in the very nature of a *Terry* or *Long* search."

I think there is plenty here. Simmons is a felon and the live-in girlfriend of Johnson, who was arrested contemporaneously right in front of her with a car that could have a firearm that she could use. Officer Pringle testified that, based on his seventeen years of experience, a person is more likely to interfere with her romantic partner's arrest because "emotions run

high" in such situations.[1] The majority opinion considers this testimony when explaining that Simmons's relationship with Johnson is relevant to the dangerousness inquiry. However, I see it as an additional fact in the totality of the circumstances. Thus, prior to the search, Officer Pringle was aware of at least three facts pointing to Simmons's dangerousness: (1) Simmons was a felon; (2) Simmons was in a live-in romantic relationship with an individual who had a criminal record, was a suspected gang member, and was being investigated in relation to a homicide; and (3) that individual was *contemporaneously* being arrested—which, in Officer Pringle's professional experience, increased the likelihood of Simmons interfering, and she certainly had the ability to do so.

It is unclear why the majority opinion did not consider the contemporaneous arrest of Simmons's live-in romantic partner as a fact that is sufficient to satisfy its contemporaneous fact requirement. The majority opinion does not clearly define its view of "contemporaneous fact."[2] However, it suggests that required facts are those such as "[n]ervousness, inconsistent answers to officers' questions, fleeing the scene" that it claims

---

[1] Officers may draw "reasonable inferences" based on their experience. *Terry*, 392 U.S. at 27; *see also United States v. Arvizu*, 534 U.S. 266, 273 (2002).

[2] The majority opinion cites the *Terry* principle that a protective sweep is "predicated upon the *on-the-spot observations* of the officer." *Terry*, 392 U.S. at 20 (emphasis added). It also cites our past statements that "[s]omething more is needed—some *observed fact* beyond the person's mere presence," *United States v. Alvarez*, 40 F.4th 339, 350 (5th Cir. 2022) (emphasis added), and "a police officer's reasonable suspicions may arise from the rational inferences of what he *sees and hears*," *United States v. Maestas*, 941 F.2d 273, 278 (5th Cir. 1991) (emphasis added). But these citations fail to specifically define "contemporaneous facts" in light of the majority opinion's conclusion.

"are missing here." Thus, it seems as though the majority opinion's view of "contemporaneous fact" requires some manifestation of immediate suspiciousness by the subject of the search.

Concerning this view, I have concerns. While the majority opinion claims that nothing in the "moment" would show that Simmons would interfere, that does not mean she had to exhibit immediate suspiciousness. Nowhere has the Supreme Court, nor this court, explicitly required facts exhibiting immediate suspiciousness. Instead, the inquiry "must be based on commonsense judgments and inferences about human behavior." *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000) (citation omitted). Common sense compels me to affirm that Officer Pringle's suspicion that Simmons was dangerous was reasonable under the circumstances at the time.

Even if some fact of immediate suspiciousness is necessary, such is not fully "missing here." It is sufficient that such existed in relation to Johnson. Take our recent opinion in *United States v. Ducksworth*, No. 24-60473, 2025 WL 3292614 (5th Cir. Nov. 26, 2025) (publication forthcoming), *mandate held*, Dec. 16, 2025, which the majority opinion discusses. In *Ducksworth*, we rejected the argument that evidence of the firearm on Ducksworth's person should be suppressed because "the driver's dishonesty about and possession of a firearm cannot be imputed to him." *Id.* at *2 (citing *Ybarra v. Illinois*, 444 U.S. 85 (1979)). Instead, we held that a passenger is in a "common enterprise" with the driver of a vehicle, such that reasonable suspicion to search a driver may warrant reasonable suspicion to search the

passenger when paired with other factors.[3] *Id.* at \*2–3. Thus, the pat-down of Ducksworth was warranted because "Ducksworth shared a connection with the driver, who could not present identification or proof of insurance, possessed a hidden firearm, and lied about it—at night, in a public, high-crime area," and "the sole officer was outnumbered." *Id.* at \*3. For "taken together, these circumstances created a reasonable, individualized suspicion that Ducksworth could also be armed and dangerous." *Id.* (citation modified).

Looking at Simmons's connection to Johnson is important, and the facts here including that were sufficient. For example, *Ducksworth* demonstrates that contemporaneous facts demonstrating dangerousness need not be the subject of the search exhibiting immediate suspiciousness. In *Ducksworth*, we acknowledged that "a driver's possession of a firearm may give rise to reasonable suspicion to pat-down his passenger, at least when coupled with other circumstances." *Id.* at \*3 (citing *United States v. Tiru-Plaza*, 766 F.3d 111, 120–22 (1st Cir. 2014)). The "other circumstances" (independent of the driver's actions and characteristics) that we considered were *not* any facts of the passenger's immediate suspiciousness, but instead various situational realities (that the search occurred "at night, in a public, high-crime area," and "the sole officer was outnumbered"). *Id.* Again, it is important that we recognize the time constraints of the police officer's

---

[3] This "common enterprise" concept was recognized by the Supreme Court in *Wyoming v. Houghton*, 526 U.S. 295, 304 (1999).

decision. It is quite a minimal time period, so we should not expect a bunch of reviews, etc.

So too here, given the timing, reasonable suspicion of Johnson's dangerousness, combined with other factors, is sufficient to justify reasonable suspicion of Simmons's dangerousness. There certainly would have been reasonable suspicion that Johnson were armed and dangerous had he not been arrested, due not only to his criminal background, but also his suspicious activity at the scene.[4] And, due to the connection between Simmons and Johnson (likely stronger here than in *Ducksworth*, as Simmons was not merely Johnson's passenger, but his romantic partner), reasonable suspicion of Johnson's dangerousness justifies reasonable suspicion of Simmons's dangerousness when "coupled with other circumstances" that Officer Pringle knew of Simmons's criminal record and the search took place at the arrest of her romantic partner. *Id.*

I see no determinative ultimate difference between *Ducksworth* and this case. The majority opinion denies that *Ducksworth* is helpful to the government, arguing that no facts here are similar to the so-called "key contemporaneous facts" in *Ducksworth*. The majority opinion states it is these key contemporaneous facts that are absent here. I recognize that there

---

[4] Johnson was not only a criminal on supervised release, a suspected gang member, and a suspect in an ongoing homicide investigation, but he also was acting suspiciously at the scene of the arrest. He exited the vehicle before being ordered to, closed his door upon exiting, told Simmons to pull the vehicle back into the yard, told Officer Pringle he did not consent to any searches, and claimed the vehicle was not his.

are some differences here from *Ducksworth*. Here, firearms were not on Simmons's or Johnson's person, the search occurred in daylight, the encounter was planned, and Officer Pringle was accompanied by other officers. But I see no reason why the totality of facts here does not yield the same result as *Ducksworth*. While this case does not have exactly the same dangerous circumstances as in *Ducksworth*, it has ones weighing in favor of dangerousness that *Ducksworth* does not—known criminal history of the passenger, the contemporaneous arrest of the passenger's lover, and a reasonably suspected firearm within the vehicle the passenger would be able to return to.[5] Yet, for some reason, the majority opinion makes the conclusory holding that the totality of facts in *Ducksworth* justified the officer's fear for his safety, while the facts here do not. I disagree.

Officer Pringle made "reasonable inferences which he [was] entitled to draw from the facts in light of his experience." *Terry*, 392 U.S. at 27. He "had to make a quick decision as to how to protect himself and others from possible danger and took limited steps to do so." *Id.* at 28. While the majority opinion demands presence of some specific facts which have never been explicitly required by the Supreme Court or this court, the touchstone of reasonableness is well-established. Indeed, it would be "unreasonable to

---

[5] Nobody denies Officer Pringle had reasonable suspicion that there was a weapon in the vehicle. And surely a weapon in a vehicle which a passenger would be able reenter is more indicative of potential danger to an officer than the discovery of a firearm on a driver who was then immediately disarmed.

No. 24-11115

deny [Officer Pringle] the right to neutralize the threat of physical harm." *Long*, 463 U.S. at 1034 (citation modified).

I worry that the majority opinion may be creating a precedent that prevents police officers from making quick decisions for their safety in dangerous situations. Despite the majority opinion repeatedly noting the rights of police officers in this very short time situation and Officer Pringle's experience, they still disagree with his right to have done what he did. Accordingly, I respectfully dissent.